# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

R. ANTHONY RUPP, III
127 Kandahar Drive
East Aurora, New York  14052

        Plaintiff,

v.

THE CITY OF BUFFALO
c/o Corporation Counsel
65 Niagara Street, 1100 City Hall
Buffalo, New York  14202

DANIEL DARENDA, individually and in his
capacity as Police Commissioner of the
Buffalo Police Department,
47  Seward Street
Buffalo, New York  14206

TODD C. MCALISTER, individually and in
his capacity as a Buffalo Police Officer,
121  Bame Avenue
Buffalo, New York  14215

NICHOLAS PARISI, individually and in his
capacity as a Buffalo Police Officer,
131 Woodward Drive
West Seneca, New York  14224

JEFFREY GIALLELLA, individually and in
his capacity as a Buffalo Police Lieutenant,
36 Heritage Farm Road,
Buffalo, New York  14218

        Defendants.

**VERIFIED COMPLAINT
AND JURY DEMAND**

Civil Action No. _____

Plaintiff, R. Anthony Rupp, III ("Rupp"), by his attorneys, Rupp Baase Pfalzgraf Cunningham LLC, as and for his verified complaint against defendants, the City of Buffalo, Buffalo Police Commissioner Daniel Darenda, Police Officer Todd McAlister, Police Officer Nicholas Parisi, and Police Lieutenant Jeffrey Giallella alleges as follows:

## PRELIMINARY STATEMENT

1.      Rupp brings this action for compensatory damages, declaratory judgment, punitive damages, other damages this Court deems just and proper, and attorneys' fees pursuant to 42 U.S.C. § 1983 and 42 U.S. § 1988 for violations of his Constitutionally-protected civil rights to free speech and his right against false imprisonment. Rupp's aforementioned rights are secured by the above-referenced statutes, the Constitution of the United States, and the common law and the Constitution of the State of New York. Further, Rupp also brings this action challenging, on its face, the constitutionality of the Code of the City of Buffalo, Chapter 293, § 293-4(G) as applied in this case.

2.      At issue in this litigation is the Buffalo Police Department's actions on the evening of December 1, 2016 when the City of Buffalo, by and through the actions of its police officers, violated Rupp's (1) right to free speech; (2) right against false imprisonment; and (3) right against police retaliation when defendants and selectively enforced the Code of the City of Buffalo, Chapter 293, § 293-4(G).

2

3.       Chapter 293, §§ 293-3, 293-4, and 293-7 were adopted by the Common Council of the City of Buffalo on July 31, 1990 and became effective August 13, 1990. Chapter 293, § 293-7 was amended on December 12, 2006 and became effective December 26, 2006.

4.       Chapter 293, § 293-4(G) is unconstitutional on its face because it prohibits speech that is protected by the First Amendment.  Section 293-4(G) essentially and unlawfully prohibits speech based on the content, substance, and/or the subjective offensiveness of the speech, as opposed to the volume and/or decibel of the speech.

5.       Chapter 293, § 293-4(G) chills and deprives Rupp and third parties from engaging in speech guaranteed by the First and Fourteenth Amendments to the United States Constitution.  In addition, Rupp is entitled to damages for violations of his First, Fourth, and Fourteenth Amendment rights, including Rupp's right to attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988.

## JURISDICTION

6.       This action is brought under 42 U.S.C. §1983, 42 U.S.C. §1988, and under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

7.       This Court has subject matter jurisdiction over all claims pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343, and 42 U.S.C. § 1983.  The Court has jurisdiction over the request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

8.      Rupp further invokes this Court's pendent jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

9.      Pursuant to 28 U.S.C. §1391(b), venue is proper in the Western District of New York because the events forming the basis of plaintiff's Complaint occurred in this District.

## PARTIES

10.     At all times hereinafter mentioned, Rupp was and is a citizen of the State of New York, County of Erie, residing at 127 Kandahar Drive, East Aurora, New York  14052.

11.     Defendant, the City of Buffalo, was and is a municipal corporation duly organized and existing under the laws of the State of New York and has a business address at City Hall, 65 Niagara Square, Buffalo, New York  14202.

12.     Defendant, the City of Buffalo, through its Common Council, City Counsel and their officers, agents, servants, employees, and/or their specialized units, promulgate, implement, review, and/or enforce, as policymakers, certain policies regarding the conduct and actions of police officers employed by the City of Buffalo, including defendants' Darenda, McAlister, Parisi, and Giallella.

4

13.     Defendant, Daniel Darenda ("Darenda"), was and is a resident of the County of Erie and State of New York, and was and is the Police Commissioner of the Buffalo Police Department.  Defendant Darenda is employed by the City of Buffalo, and was, at all times hereinafter mentioned, acting within the scope of his employment and official capacity as the Police Commissioner of the City of Buffalo.

14.     As the Police Commissioner for the City of Buffalo, defendant Darenda was responsible for the hiring, training, supervision, discipline, and conduct of the defendant officers, and is further responsible for setting, reviewing, and/or enforcing the policies and regulations of the Buffalo Police Department.  Defendant Darenda also is responsible for ensuring that the City of Buffalo Police Officers obey the laws of the State of New York and the United States of America.

15.     Upon information and belief, at all times relevant, defendant Darenda was a policymaker for the Buffalo Police Department in all matters that are alleged herein, and defendant Darenda participated in the promulgation of policies and/or customs for the Buffalo Police Department by defendant the City of Buffalo.  Defendant Darenda directly was responsible for policy and custom implementation (in whole or in part) at the City of Buffalo Police Department.  In addition, defendant Darenda is being sued in his individual capacity for damages caused by his actions and/or conduct.

16.     Defendant, Jeffrey Giallella, was and is a resident of the County of Erie, and State of New York.  He was and is a Police Lieutenant employed by the City of Buffalo at

all times hereinafter mentioned, and was acting within the scope of his employment and official capacity as a police lieutenant at the time of the incident giving rise to this lawsuit. In addition, defendant Giallella is being sued in his individual capacity for damages caused by his actions and/or conduct.

17.     Defendant, Todd C. McAlister, was and is a resident of the County of Erie, and State of New York, and was and is a Police Officer employed by the City of Buffalo at all times hereinafter mentioned. Defendant McAlister was acting within the scope of his employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit. In addition, defendant McAlister is being sued in his individual capacity for damages caused by his actions and/or conduct.

18.     Defendant, Nicholas Parisi, was and is a resident of the County of Erie, and State of New York, and was and is a Police Officer employed by the City of Buffalo at all times hereinafter mentioned. Defendant Parisi was acting within the scope of his employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit. In addition, defendant Parisi is being sued in his individual capacity for damages caused by his actions and/or conduct.

19.     At all relevant times, defendants, either personally or through their employees, were acting under the color of law and/or in compliance with the official rules, regulations, laws, statutes, policies, customs, ordinances, usages and/or practices of the City of Buffalo.  Defendants' actions and conduct show that they did not, nor could they, reasonably rely upon any existing law.

## FACTUAL BACKGROUND

### Code of the City of Buffalo, Chapter 293, §§ 293-3, 293-4, and 293-7

20.     Chapter 293 of the Code of the City of Buffalo is entitled "Noise."  It is the statutory scheme that governs noise violations within the City of Buffalo, New York.

21.     Chapter 293, § 293-3, entitled "Unreasonable noise prohibited" provides as follows:

> It shall be unlawful for any person to make, continue, cause to be made or permit to be made any unreasonable noise within the geographical boundaries of the City of Buffalo or within those areas over which the City has jurisdiction. The determination as to the existence of unreasonable noise may be established either by the specific acts considered to be unreasonable noise enumerated within § 293-4 or by the measurements exceeding the limitations set forth in § 293-5.

7

22.     Chapter 293, § 293-4, entitled "Specific acts constituting unreasonable noise" provides, in relevant part:

> The following acts and the causes thereof are declared to be in violation of this chapter and to constitute unreasonable noise:
>
> G.  Yelling, shouting or hooting at any time or place so as to annoy or disturb the quiet, comfort and repose of a reasonable person of normal sensitivities.

23.     Chapter 293, § 293-7 provides the penalty for a violation of the above-cited ordinances.

24.     Chapter 293, § 293-4(G) is an unconstitutional ordinance because it prohibits speech protected by the First and Fourteenth Amendment based on the content, substance, and/or the subjective offensiveness of the speech, as opposed to the volume and/or decibel of the speech.  Said another way, Chapter 293, § 293-4(G) is unconstitutional because it subjectively prohibits the free exercise of speech under the guise of a purported noise ordinance.

**Allegations of Fact**

25.     On or about December 1, 2016, at approximately 8:30 p.m., Rupp was a pedestrian on or around 291 Seneca Street, Buffalo, New York  14204 (otherwise known as the intersection near Chef's Restaurant).

26.     Rupp and his wife, Linda Rupp, walked out of Chef's Restaurant and were crossing Seneca Street to go to the Chef's parking lot located across the street from the

restaurant.  At the time of the incident, it was well after sunset and the street was dark aside from the street lights and nearby illuminated signage.

27.     As Rupp and his wife began walking across the street and reached the midway point of the street crossing, Rupp observed a large vehicle approaching at rapid speed down Seneca Street from the East.  The vehicle was dark in color and had no headlights or running lights illuminating it in the dark.  The vehicle was approximately 200 feet away from Rupp when he first observed it.  The fast-moving, dark vehicle, ended up being a black-and-white SUV without any headlights on and without any emergency lights activated.

28.     Seeing this vehicle rapidly approaching, Rupp exclaimed to his wife "watch out - he has no lights!" and they quickly crossed the street in order to avoid being hit by the subject vehicle, which Rupp later learned was being operated by defendant McAlister.

29.     Seconds later, two female patrons of Chef's Restaurant walked out of the parking lot across from the restaurant and attempted to cross Seneca Street to go to Chef's.  From Rupp's vantage point, it appeared that the passersby certainly would be hit by the ongoing marked and unilluminated vehicle.

30.     Defendant McAlister was able to apply his brakes and come to an abrupt stop only a few feet away from hitting and killing the two female patrons.

31.    Once the vehicle stopped, defendant McAlister then flashed his headlights or hi-beams at the female pedestrians.

32.    Angry at defendant McAlister's reaction and fueled by the fear that had been induced in Rupp and his wife in witnessing this near-miss, Rupp called out "Turn your lights on, asshole."

33.    At the time Rupp uttered this statement, he did not know the vehicle was a marked police car, without overhead lights being driven by defendant McAlister.

34.    Once Rupp determined that the pedestrians were safe, he and his wife proceeded to the Chef's parking lot.

35.    The vehicle at issue then pulled into the Chef's parking lot, and defendant McAlister then proceeded to approach the Rupps.  McAlister rolled down his window, and chastised Rupp for calling out to him to turn on his headlights.

36.    Specifically, defendant McAlister falsely stated to Rupp that he "could be arrested" for having called out to him as Rupp did.

37.    It was at this time Rupp first noticed that the subject vehicle was a Buffalo Police Department SUV bearing vehicle number B-525, and that the driver was defendant McAlister.

38.     In response to defendant McAlister's statement that Rupp could be arrested, Rupp advised McAlister that he should not be driving a vehicle down a city street after dark without headlights on, and Rupp reminded McAlister that he had almost caused a pedestrian accident.

39.     Defendant McAlister became immediately agitated and visibly angry in response.  He then exited his SUV and advised Rupp that he was detained and requested identification.

40.     Rupp provided defendant McAlister with his government-issued attorney identification card containing his photograph, as Rupp is licensed to practice law in the State of New York.

41.     In response, defendant McAlister demanded Rupp's driver's license and threatened to detain Rupp until he produced his license, despite the fact that he already had Rupp's name and attorney identification card.

42.     While at the scene, defendant McAlister attempted to explain to Rupp that he was driving the police vehicle without its lights because it was the Lieutenant's vehicle that he was taking for service because the headlights were not operational.  Defendant McAlister also proffered a purported excuse for nearly striking the two pedestrians by stating that the pedestrians were jaywalking.

11

43.     Rupp responded that he viewed defendant McAlister's decision deliberately to drive an unilluminated vehicle in the dark as a significant lapse in judgment and that he believed McAlister had violated the New York Vehicle and Traffic Law.

44.     Defendant Parisi then arrived on the scene.

45.     After defendant Parisi's arrival, defendant McAlister admitted several times in his presence that he was driving the subject vehicle without its headlights on and that he had apologized to the pedestrians for almost hitting them with his vehicle.  He also falsely accused Rupp of saying that Rupp yelled at defendant McAlister:  "Turn your headlights on, you fucking asshole."

46.     Defendant McAlister then retracted that statement after it was challenged as an embellishment.

47.     In the presence of Rupp, Mr. Rupp's wife, and defendant Parisi, defendant McAlister continued to argue that he was in the right for driving the subject vehicle in the dark with no headlights because it needed to be serviced.

48.     Because defendant McAlister had admitted in the presence of another officer that he drove the subject vehicle in the dark without its headlights, thereby causing the incident, Rupp requested that defendant Parisi issue a citation to defendant McAlister for his admitted violation of the Vehicle and Traffic Law because a police officer is not exempt from the

New York Vehicle and Traffic Law when the officer is not involved in an emergency operation.

49.     Defendant Parisi refused to issue a citation to his fellow officer, defendant McAlister.

50.     It was at this point that defendant McAlister insisted that Rupp produce his driver's license.

51.     Rupp refused as he already had produced government-issued photo identification to defendant McAlister.

52.     Defendant McAlister continued unlawfully to detain Rupp and made it clear he would remain detained until Rupp provided him with his driver's license.

53.     At this time, Rupp was unlawfully seized and falsely detained.

54.     Rupp produced his driver's license to defendant McAlister as it was clear the officer would not allow him to depart the area until his driver's license was produced.

55.     Defendant Giallella thereafter arrived at the scene.

56.     Rupp explained to defendant Giallella his side of what had transpired prior to defendant Giallella's arrival, and he requested that defendant McAlister be cited for driving

his vehicle on a city street after dark with no headlights on.  Rupp further requested McAlister be cited for instigating an incident by pursuing Rupp onto private property and falsely threatening him with arrest.

57.     Defendant Giallella then privately spoke with defendant McAlister and defendant Parisi and returned with a citation to Rupp for a violation of the City of Buffalo's noise prohibition, Chapter 293, Section 4 and 7, of the Buffalo City Code.  A copy of the City of Buffalo Ordinance Violations Summons ("Summons") issued to Rupp on December 1, 2016 is attached hereto as Exhibit A.

58.     Under the "Factual Part" of the Summons, it states that Rupp "did yell Turn (sic) your lights on asshole."  *See* Exhibit A.

59.     All parties subsequently left the scene after the citation to Rupp was issued.

60.     On or about December 2, 2016, Rupp sent defendant Darenda a letter advising of the details and facts of the December 1, 2016 incident and raised several complaints and concerns for defendant Darenda's immediate consideration.  A copy of Rupp's December 2, 2016 letter to defendant Darenda is attached hereto as Exhibit B.

14

61.     Rupp did not receive any response from defendant Darenda as of the filing
of this complaint.

62.     With regard to the citation issued to Rupp for an alleged violation of the
City of Buffalo's noise prohibition, Chapter 293, Section 4 and 7, of the Buffalo City Code,
Rupp pled not guilty to the charge.

63.     On October 23, 2017, Rupp and his counsel appeared for before the City
of Buffalo, Bureau of Administrative Adjudication Department (Greg Fina, Administrative Law
Judge Presiding) for a hearing in connection with the citation for a violation of the City of
Buffalo's noise prohibition, Chapter 293, Section 4 and 7, of the Buffalo City Code.

64.     At the October 23, 2017 hearing, Rupp was found not guilty of any
violation or crime.  A copy of the City of Buffalo, Bureau of Administrative Adjudication's
decision, dated October 23, 2017, is attached hereto as Exhibit C.

65.     On or about February 24, 2017 and March 1, 2017, Rupp served
defendants with a Notice of Claim and Second Notice of Claim in accordance with the
requirements of General Municipal Law § 50.  Rupp's Notices of Claim were served within
90 days of the claims upon which the instant action is brought.

66.     More than 30 days have elapsed since service of the Notices of Claim and
Defendants have neglected and refused to make payment.

## Allegations of Policy, Customs, Pattern, and Practice

67.    Upon information and belief, in 2015, the University of Buffalo Law School Human Rights Clinic undertook an investigation to document the Buffalo Police Department's practices, and was later joined by the faculty and students in the Cornell Law School Clinical program.  The investigation resulted in a report entitled:  "Unchecked Authority without Accountability in Buffalo, New York:  The Buffalo Police Department's Widespread Pattern and Practice of Unconstitutional Discriminatory Policing, and the Human, Social and Economic Costs" dated August 30, 2017.  A copy of the final executive summary of the investigation is attached hereto as Exhibit D.

68.    Upon information and belief, the findings of the study documented that the Buffalo Police Department engaged in a pattern and practice of conduct that violated the United States Constitution, as well as the Constitution and laws of New York State.  Specifically, the investigation found that the Buffalo Police Department engaged in a pattern or practice of retaliating against individuals who question or criticize its police practices, and the police department subjects individuals to retaliatory ticketing, arrests, criminal investigations, lawsuits, and other baseless complaints.  *See* Exhibit D, at 33.

69.    The final executive summary of the investigation states that: "[i]n violation of the First Amendment, BPD officers have detained and arrested individuals who lawfully object to police actions or behave in a way that officers perceive as disrespectful." Exhibit D, at 33.

70.     Upon information and belief, the investigation documented 13 cases of retaliation by the Buffalo Police Department against individuals who exercised their First Amendment rights.  Accordingly, the investigation concluded that the Buffalo Police Department and City failed to provide officers with policing directives within the strictures of the constitution.  *See* Exhibit D, at 33.

71.     Upon information and belief, defendants the City of Buffalo and Darenda maintained a policy, custom, or practice of failing to provide defendants McAlister, Parisi, and Giallella training and adequate supervision on the rights and protections afforded to citizens by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

72.     Upon information and belief, defendants the City of Buffalo and Darenda maintained a policy, custom, or practice of retaliating against individuals who lawfully object to police actions or who behave in a way that officers perceive as disrespectful.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### VIOLATION OF THE FIRST AMENDMENT
**First Amendment Retaliation under 42 U.S.C. § 1983**
**Against Defendants McAlister, Parisi, and Giallella**

73.　　Rupp incorporates the allegations contained in paragraphs 1 through 72 of this verified complaint as if fully set forth herein.

74.　　Rupp's speech was noncommercial and conducted on a public right-of-way.

75.　　Rupp's speech is protected by the First Amendment.

76.　　Rupp's speech did not violate any law.

77.　　The conduct and actions of defendants Darenda, McAlister, Parisi, and Giallella were done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts.

78.　　But for defendants McAlister, Parisi, and Giallella's retaliatory animus regarding Rupp's speech, defendants McAlister, Parisi, and Giallella would not have arrested Rupp.

79.     But for defendants McAlister, Parisi, and Giallella's retaliatory animus regarding Rupp's speech, defendants McAlister, Parisi, and Giallella would not have issued Rupp a citation for allegedly violating Chapter 293, Sections 4 and 7, of the Buffalo City Code.

80.     Defendants McAlister, Parisi, and Giallella's conduct and actions were motivated and/or substantially caused by Rupp's speech by virtue of the statement he made to defendant McAlister while he was driving on a public road, in the dark, with no headlights on.

81.     Defendants McAlister, Parisi, and Giallella's conduct and actions were done without lawful justification or reason and caused Rupp injury.

82.     Defendants McAlister, Parisi, and Giallella did not have probable cause that Rupp violated Chapter 293, Sections 4 and 7, of the Buffalo City Code.

83.     As a direct and proximate result of the foregoing, Rupp was damaged and injured in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF

### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT
#### Unlawful Seizure and Arrest under 42 U.S.C. §1983
#### <u>Against Defendants McAlister, Parisi, and Giallella</u>

84.     Rupp incorporates the allegations contained in paragraphs 1 through 83 of this verified complaint as if fully set forth herein.

85.     Defendants  McAlister, Parisi, and Giallella are liable pursuant to 42 U.S.C. § 1983 for objectively unreasonably seizing and unlawfully arresting Rupp in violation of the Fourth and Fourteenth Amendment to the United States Constitution.

86.     Defendants McAlister, Parisi, and Giallella were acting under the color of law when Rupp was arrested.

87.     Defendants McAlister, Parisi, and Giallella did not have probable cause that Rupp violated Chapter 293, Sections 4 and 7, of the Buffalo City Code.

88.     Defendants McAlister, Parisi, and Giallella deprived Rupp of the rights, privileges, and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States and in violation of 42 U.S.C. § 1983.

89.     Defendants McAlister, Parisi, and Giallella confined Rupp in the Chef's parking lot when they advised him that he was detained and demanded he provide his driver's license, despite the fact that Rupp already had provided the officers with government-issued proof of his identity.

90.     Rupp was aware of the confinement by officers McAlister, Parisi, and Giallella, and repeatedly advised the officers that he did not consent to the confinement.

91.    The confinement by defendants McAlister, Parisi, and Giallella was not otherwise privileged and was performed in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States.

92.    As a direct and proximate result of the foregoing, Rupp was damaged and injured in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF

**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT**
**Malicious Prosecution under 42 U.S.C. §1983**
**Against All Defendants**

93.    Rupp incorporates the allegations contained in paragraphs 1 through 92 of this verified complaint as if fully set forth herein.

94.    Defendants unreasonably seized and unlawfully arrested Rupp in violation of the Fourth and Fourteenth Amendment to the United States Constitution.

95.    Upon information and belief, defendants despite knowing that probable cause did not exist to detain, arrest, and prosecute Rupp for a violation of Chapter 293, Section 4 and 7, of the Buffalo City Code, acted intentionally, and with malice to cause Rupp to be arrested, charged, and prosecuted for that violation, thereby violating Rupp's rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution.

96.     On October 23, 2017, the prosecution of the charges levied by defendants against Rupp on December 1, 2016 were terminated in Rupp's favor when he was found not guilty of any violation or crime for which he was cited by defendants.

97.     But for defendants' unlawful and malicious conduct, Rupp would not have been arrested and/or prosecuted.

98.     Upon information and belief, defendants' actions and conduct were malicious and deprived Rupp of his liberty without probable cause and were in violation of clearly established constitutional law and no reasonable police officer would have believed that his actions were lawful.

99.     As a direct and proximate result of the foregoing, Rupp was damaged and injured in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF

### FALSE ARREST IN VIOLATION OF NEW YORK STATE LAW
<u>Against all Defendants</u>

100.    Rupp incorporates the allegations contained in paragraphs 1 through 99 of this verified complaint as if fully set forth herein.

101.    Defendants intentionally and illegally confined, detained, and/or arrested Rupp.

22

102.   Rupp was conscious of the arrest, detainment, and/or confinement.

103.   Rupp was subjected to an illegal, false, and unlawful arrest as a result of acts and/or omissions by defendants, and was taken into custody, detained, and confined without probable cause, privilege, or consent.

104.   Defendants knew, or should have known, Rupp had not broken any law and that there was no probable cause or basis whatsoever in arresting Rupp and charging him with a violation of Chapter 293, Sections 4 and 7, of the Buffalo City Code.

105.   Defendants, through any investigation or due diligence, would, and should, have known that Rupp had not committed any crime.

106.   As a result of defendants' actions and conduct, Rupp's freedom, liberty, and civil rights were denied, and he was detained and imprisoned against his will and without any good faith basis, reasonable suspicion, or probable case.

107.   As a direct and proximate result of the foregoing, Rupp was damaged and injured in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF

## MALICIOUS PROSECUTION IN VIOLATION OF NEW YORK STATE LAW
### Against all Defendants

108.    Rupp incorporates the allegations contained in paragraphs 1 through 107 of this verified complaint as if fully set forth herein.

109.    Defendants unreasonably seized and unlawfully arrested Rupp in violation of the Fourth and Fourteenth Amendment to the United States Constitution.

110.    Upon information and belief, defendants despite knowing that probable cause did not exist to detain, arrest, and prosecute Rupp for a violation of Chapter 293, Sections 4 and 7, of the Buffalo City Code, acted intentionally, and with malice to cause Rupp to be arrested, charged, and prosecuted for that violation, thereby violating Rupp's rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution.

111.    On October 23, 2017, the prosecution terminated in Rupp's favor when he was found not guilty of any violation or crime for which defendants cited Rupp.

112.    But for defendants' unlawful and malicious conduct, Rupp would not have been arrested and/or prosecuted.

113.    Upon information and belief, defendants' actions and conduct deprived Rupp of his liberty without probable cause and were in violation of clearly established

constitutional law and no reasonable police officer would have believed that their actions were lawful.

114.    As a direct and proximate result of the foregoing, Rupp was damaged and injured in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

**VIOLATION OF THE FIRST, FOURTH, AND FOURTEENTH AMENDMENTS**
**Policy, Custom, and Practice of Retaliation and**
**Failure to Supervise and Train under 42 U.S.C. §1983**
**<u>Against Defendants the City of Buffalo and Darenda</u>**

115.    Rupp incorporates the allegations contained in paragraphs 1 through 114 of this verified complaint as if fully set forth herein.

116.    Prior to December 1, 2016, defendants the City of Buffalo and Darenda developed and maintained policies, customs, and practices exhibiting deliberate indifference to the constitutional rights of persons in Buffalo, which caused the violation of Rupp's rights.

117.    At all relevant times, defendants, the City of Buffalo and Darenda, were aware that defendants McAlister, Parisi, and Giallella were inadequately trained regarding the First, Fourth, and Fourteenth Amendment, yet defendants, the City of Buffalo and Darenda, maintained a policy or custom of failing to provide defendants McAlister, Parisi, and Giallella training on the First, Fourth, and Fourteenth Amendment or adequate supervision.

118.     Upon information and belief, defendants City of Buffalo and Darenda were aware of the report: "Unchecked Authority without Accountability in Buffalo, New York: The Buffalo Police Department's Widespread Pattern and Practice of Unconstitutional Discriminatory Policing, and the Human, Social and Economic Costs" dated August 30, 2017.

119.     Upon information and belief, defendants City of Buffalo and Darenda were aware of the findings of the study that documented that the Buffalo Police Department engaged in a pattern and practice of conduct that violated the United States Constitution, as well as the Constitution and laws of New York State.  Moreover, defendants City of Buffalo and Darenda knew the investigation found that the Buffalo Police Department engaged in a pattern or practice of retaliating against individuals that question or criticize its police practices, and the police department subjects individuals to retaliatory ticketing, arrests, criminal investigations, lawsuits, and other baseless complaints. *See* Exhibit D, at 33.

120.     Defendants City of Buffalo and Darenda were aware that the final executive summary of the investigation states that: "[i]n violation of the First Amendment, BPD officers have detained and arrested individuals who lawfully object to police actions or behave in a way that officers perceive as disrespectful."  Exhibit D, at 33.

121.     As made clear by the study referenced above, it was the policy, custom, or both of defendants the City of Buffalo and Darenda inadequately to supervise and train its police officers, including defendants McAlister, Parisi, and Giallella, thereby failing to prevent the constitutional violations against Rupp.

122.     Upon information and belief, defendants the City of Buffalo and Darenda maintained a policy, custom, or practice of retaliating against individuals who lawfully object to police actions or behave in a way that officers perceive as disrespectful.

123.     Defendants the City of Buffalo and Darenda's policies, customs, and practices demonstrate a deliberate indifference to the constitutional rights of persons within the City of Buffalo and caused the violation of Rupp's rights alleged herein.

124.     As a direct and proximate result of defendant the City of Buffalo and Darenda's policies, customs, and practices, Rupp was damaged and injured at an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF

### RESPONDEAT SUPERIOR LIABILITY
### Against Defendant City of Buffalo

125.     Rupp incorporates the allegations contained in paragraphs 1 through 124 of this verified complaint as if fully set forth herein.

126.     At the time of the incident alleged in the complaint, defendants McAlister, Parisi, and Giallella were acting in their official capacity as members of the Buffalo Police Department and were engaged in actions and conduct during the course and scope of their duties that deprived Rupp of his constitutional rights and privileges.

127.   As a result of the conduct of defendants McAlister, Parisi, and Giallella, defendant City of Buffalo is liable to Rupp pursuant to the state common law doctrine of respondeat superior.  Upon information and belief, defendants McAlister, Parisi, and Giallella were acting pursuant to defendants the City of Buffalo and Darenda's policy, custom, or practice, including, but not limited to, being inadequately trained and inadequately supervised on the rights and protections afforded to citizens by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

128.   As a direct and proximate result of the foregoing, Rupp was damaged and injured in an amount to be determined at trial.

### EIGHTH CLAIM FOR RELIEF

**42 U.S.C. §1983 - FIRST AMENDMENT
Challenge to Chapter 293, Section 4(G), of the Buffalo City Code
<u>Against Defendant City of Buffalo</u>**

129.   Rupp incorporates the allegations contained in paragraphs 1 through 128 of this verified complaint as if fully set forth herein.

130.   Chapter 293, Section 4(G) is not narrowly tailored to achieve any significant government interest.

131.   Chapter 293, Section 4(G) fails to leave open ample alternatives for Rupp's expression of free speech.

28

132.    Chapter 293, Section 4(G) is unconstitutionally overbroad.


133.    Chapter 293, Section 4(G) was the cause of defendants' decision to arrest Rupp.


134.    Chapter 293, Section 4(G) is not sufficiently definite to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden, because the statute uses a subjective standard that prohibits speech protected by the First and Fourteenth Amendment based on the content, substance, and/or the subjective offensiveness of the speech, as opposed to the volume and/or decibel of the speech.


135.    Chapter 293, Section 4(G) does not provide public officials with clear standards for enforcement so as to avoid resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application, because the statute subjectively prohibits the free exercise of speech under the guise of a purported noise ordinance.


136.    Because Chapter 293, Section 4(G) offends the constitutional void-for-vagueness doctrine of due process, the statute should be declared unconstitutional as a matter of law.

## NINTH CLAIM FOR RELIEF

### 42 U.S.C. §1983 - FIRST AMENDMENT
### Unconstitutional Application of Chapter 293, Section 4(G), of the Buffalo City Code
### <u>Against All Defendants</u>

137.    Rupp incorporates the allegations contained in paragraphs 1 through 136 of this verified complaint as if fully set forth herein.

138.    Rupp's arrest was based on an overbroad application of Chapter 293, Section 4(G).

139.    The application of Chapter 293, Section 4(G) to Rupp's conduct was not narrowly tailored to achieve any significant government interest.

140.    The application of Chapter 293, Section 4(G) to Rupp's conduct did not leave open ample alternatives for Rupp's expression in violation of his right to free speech.

141.    The application of Chapter 293, Section 4(G) by the defendants in this case was designed to harass, impede, thwart and suppress Rupp's constitutionally protected right to free speech.

142.    Because defendants' application of Chapter 293, Section 4(G) was designed to retaliate against Rupp, defendants are liable to plaintiff for an amount to be determined at trial, and Chapter 293, Section 4(G) should be declared unconstitutional.

**TENTH CLAIM FOR RELIEF**

**42 U.S.C. §1983 - FOURTEENTH AMENDMENT**
**Chapter 293, Sections 4(G) is Void for Vagueness**
**Against Defendant City of Buffalo**

143.    Rupp incorporates the allegations contained in paragraphs 1 through 142 of this verified complaint as if fully set forth herein.

144.    The prohibitions of Chapter 293, Section 4(G) are vague and not clearly defined.

145.    Chapter 293, Section 4(G) offers no clear and measureable standard by which Rupp and others can act lawfully.

146.    Chapter 293, Section 4(G) does not provide explicit standards for application by law enforcement officers.

147.    Chapter 293, Section 4(G) fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits, and authorizes or encourages arbitrary and discriminatory enforcement, or both.

**ELEVENTH CLAIM FOR RELIEF**

**FAILURE TO INTERVENE**
**Against Defendants Parisi and Giallella**

148.    Rupp incorporates the allegations contained in paragraphs 1 through 147 of this verified complaint as if fully set forth herein.

31

149.    Upon information and belief, all law enforcement officers have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.

150.    On December 1, 2016, defendants Parisi and Giallella both responded to the scene of the incident giving rise to this complaint.

151.    Defendants Parisi and Giallella both were made aware of Rupp's unlawful detention and arrest by defendant McAlister in contravention of Rupp's constitutional rights, and they breached their duty to intervene when they aided, abetted, and participated in defendant McAlister's scheme to deprive Rupp of his First and Fourth Amendment rights.

152.    Defendants Parisi and Giallella's breach of their duty to intervene was the proximate cause of Rupp's damages by virtue of their failure to act and intervene on Rupp's behalf while his constitutionally protected rights were infringed.

153.    As a result of defendant Parisi and Giallella's failure to intervene, Rupp has been damaged in an amount to be determined at trial.

## TWELFTH CLAIM FOR RELIEF

### PUNITIVE DAMAGES
### <u>Against all Defendants</u>

154.    Rupp incorporates the allegations contained in paragraphs 1 through 153 of this verified complaint as if fully set forth herein.

155.    The foregoing acts were done recklessly, intentionally, wantonly and with gross indifference to the civil rights of Rupp, thereby entitling him to punitive and exemplary damages.

## THIRTEENTH CLAIM FOR RELIEF

### ATTORNEYS' FEES AND COSTS UNDER 42 U.S.C. § 1988
### <u>Against all Defendants</u>

156.    Rupp incorporates the allegations contained in paragraphs 1 through 155 of this verified complaint as if fully set forth herein.

157.    The foregoing events constitute violations of Rupp's statutory and constitutional rights, thereby entitling him to attorneys' fees, costs and disbursements as permitted by 28 U.S.C. § 1988.

## DEMAND FOR JURY TRIAL

158.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Rupp

demands trial by jury in this action of all issues so triable.

## PRAYER FOR RELIEF

Plaintiff, R. Anthony Rupp, III, prays for relief and demands judgment as follows:

1.    That Rupp be awarded compensatory damages against all defendants in an
amount to be determined at trial;

2.    That Rupp be awarded punitive damages against all defendants in an
amounted to be determined at trial;

3.    That this Court enter a declaration that Chapter 293, Section 4(G) of Code
of the City of Buffalo is unconstitutional on its face;

4.    That this Court enter a declaration that the application of Chapter 293,
Section 4(G) of Code of the City of Buffalo to Rupp's conduct was unconstitutional;

5.    That this Court, pursuant to 42 U.S.C. §1988, issue an order awarding
plaintiff reasonable attorneys' fees, together with the costs of this action against all defendants;
and

6.     That this Court award such other further relief, together with any other

legal or equitable relief, or both, as the Court deems just and proper.

Dated:     November 22, 2017
           Buffalo, New York

                              **RUPP BAASE PFALZGRAF CUNNINGHAM** LLC
                              Attorneys for Plaintiff


                                    s/ Marco Cercone
                              Marco Cercone, Esq.
                              Patrick Leavy, Esq.
                              1600 Liberty Building
                              Buffalo, New York  14202-3694
                              Phone:  (716) 854-3400
                              cercone@ruppbaase.com
                              leavy@ruppbaase.com

## **VERIFICATION**

STATE OF NEW YORK       )
                                             : ss.:
COUNTY OF ERIE           )


     R. Anthony Rupp, III, being duly sworn, deposes and says that he is the plaintiff named in the within entitled action; that he has read the foregoing Verified Complaint and knows the contents thereof; and that the same is true to his own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters he believes them to be true.


_____
R. Anthony Rupp, III, Plaintiff

Sworn to before me this
22nd day of November, 2017.

_____
Notary Public

JODI L. FOLEY-JOHNSTON
Notary Public, State of New York
Qualified in Erie County
My Commission Expires Nov. 22, 2021