UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

R. ANTHONY RUPP, III,

     Plaintiff,

  v.

THE CITY OF BUFFALO,
DANIEL DERENDA,
 *Individually and in his capacity as Police*
 *Commissioner of the Buffalo Police Department,*
TODD C. McALISTER,
 *Individually and in his capacity as a*
 *Buffalo Police Officer*,
NICHOLAS PARISI,
 *Individually and in his capacity as a*
 *Buffalo Police Officer*, and
JEFFREY GIALLELLA,
 *Individually and in his capacity as a*
 *Buffalo Police Lieutenant*,

     Defendants.

**DECISION AND ORDER**
17-CV-1209S

## I. INTRODUCTION

In this action, Plaintiff R. Anthony Rupp, III, a local attorney, alleges that the City of Buffalo and several of its police officers violated his constitutional rights in the course of issuing him a summons for yelling at a passing vehicle.

Presently before this Court is the Report and Recommendation of the Honorable Jeremiah J. McCarthy, United States Magistrate Judge, recommending that Rupp's motion for summary judgment be denied and that Defendants' omnibus motion for dispositive relief be granted in part and denied in part.   (Docket No. 30.)   Both sides have objected to portions of the Report and Recommendation.   (Docket Nos. 31, 32.) With briefing complete and oral argument unnecessary, this Court will accept in part and

1

set aside in part the Report and Recommendation, deny Rupp's motion for summary judgment, and grant summary judgment in Defendants' favor.

## II. BACKGROUND

### A. Facts

The material facts are generally not in dispute.   On December 1, 2016, Rupp and his wife, Linda, left Chef's Restaurant on Seneca Street in the City of Buffalo at approximately 8:30 p.m.   (Affidavit of R. Anthony Rupp ("Rupp Aff."), ¶ 3;[1] Affidavit of Linda Rupp ("L. Rupp Aff."), ¶¶ 1, 2.[2])   They exited the restaurant and proceeded to cross Seneca Street toward the Chef's parking lot.   (Rupp Aff., ¶ 3.)   It was dark but for illumination from the streetlights and nearby lit signs.   (Rupp Aff., ¶ 3; L. Rupp Aff., ¶ 2.)

At the same time, Defendant Todd C. McAlister, a police officer with the Buffalo Police Department, was driving a police vehicle on Seneca Street near Chef's, not far from the Buffalo Police Department garage on Seneca Street.   (Affidavit of Todd C. McAlister ("McAlister Aff."), Docket No. 25-2, ¶¶ 3, 4.)

As the Rupps began to cross Seneca Street, Rupp checked both ways and did not see any vehicles.   (Rupp. Aff., ¶ 3.)   The couple crossed to the middle of the street, at which time Rupp noticed a vehicle—later learned to be McAlister's—approaching from approximately 200 feet away.   (Rupp. Aff., ¶ 4.)   Rupp could see only the outline of the vehicle because its headlights and running lights were off.   (Rupp Aff., ¶ 4; L. Rupp Aff., ¶ 3.)   The approaching vehicle "startled" Rupp since it came "out of nowhere" and, in

---

1 Rupp's affidavit, with attached exhibits, is found at Docket No. 20-3, pp. 2-81.

2 Linda Rupp's affidavit is found at Docket No. 20-3, pp. 83-87.

Rupp's judgment, was "rapidly approaching."   (Rupp Aff., ¶ 4.)   Rupp said to Linda, "Watch out—he has no lights on," and he quickly ushered her the rest of the way across Seneca Street.   (Rupp Aff., ¶ 4; L. Rupp Aff., ¶ 3.)   Defendants admit that McAllister was driving the vehicle without its headlights or running lights on.   (Defendants' Response to Plaintiffs' Statement of Material Facts ("Defendants' Response"), Docket No. 25-3, ¶¶ 4, 17.)

In the meantime, two women were crossing Seneca Street from the far end of the Chef's parking lot, heading toward the restaurant-side of Seneca Street (crossing the opposite way as the Rupps further down Seneca Street).   (Rupp Aff., ¶ 6; L. Rupp Aff., ¶ 4.)   They stepped directly into McAlister's path.   (Rupp Aff., ¶ 6; L. Rupp Aff., ¶ 4; McAlister Aff., ¶ 4.)   Rupp was certain that they would be hit, but McAlister stopped the vehicle before reaching them.   (Rupp Aff., ¶ 6; McAlister Aff., ¶ 5.)

McAlister does not estimate how far he was from the women when he stopped, but Rupp approximates that McAlister was two feet from the women, while Linda states that McAlister was "only inches" from them.   (Rupp Aff., ¶ 6; L. Rupp Aff., ¶ 4.)   After stopping, McAlister flashed his headlights as a signal to the women that they could safely cross.   (Rupp Aff., ¶ 6; L. Rupp Aff., ¶ 4; McAlister Aff., ¶ 5.)   The vehicle's lights then went dark again as McAlister proceeded.   (Rupp Aff., ¶ 6.)

At that point, Rupp yelled out, "Turn your lights on, asshole."   (Rupp Aff., ¶ 7; L. Rupp Aff., ¶ 5.)   McAlister heard Rupp's "loud yell" from inside his moving vehicle as he proceeded down Seneca Street.   (McAlister Aff., ¶ 7.)   In response, McAlister turned into the Chef's parking lot where he encountered the Rupps.   (Rupp Aff., ¶ 9; L. Rupp

Aff., ¶ 6; McAlister Aff., ¶ 7; Defendants' Response, ¶ 10.)   It was not until this time that both Rupp and Linda realized, for the first time, that the vehicle was a Buffalo Police Department SUV being driven by a Buffalo police officer.   (Rupp Aff., ¶ 10; L. Rupp Aff., ¶ 7.)

From his vehicle, McAlister told Rupp that he could arrest him for yelling as he did. (Rupp Aff., ¶ 11; L. Rupp Aff., ¶ 8; Defendants' Response, ¶ 11.)   Rupp responded that McAlister should not be driving with his headlights off and told him that he almost hit two pedestrians.   (Rupp Aff., ¶ 12; L. Rupp Aff., ¶ 9; Defendants' Response, ¶ 12.) McAlister then exited the vehicle, asked Rupp for identification, and told him that he was detained.   (Rupp Aff., ¶ 13; L. Rupp Aff., ¶ 10; Defendants' Response, ¶ 13.)   Rupp produced his attorney-identification card, and the two men continued to argue over what had transpired.[3]   (Rupp Aff., ¶¶ 13-15; L. Rupp Aff., ¶¶ 10, 12, 13.)   McAlister contends that Rupp refused, at that time, to produce his driver's license.   (McAlister Aff., ¶ 8.)

Defendant Nicholas Parisi, a Buffalo police officer, then arrived on the scene. (Rupp Aff., ¶ 16; L. Rupp Aff., ¶ 14; McAlister Aff., ¶ 9.)   Rupp asked Parisi to issue McAlister a summons for driving without his lights on.   (Rupp Aff., ¶ 18; L. Rupp Aff., ¶ 15; Defendants' Response, ¶ 19.)   Parisi refused.   (Rupp Aff., ¶ 18; L. Rupp Aff., ¶ 15.) McAlister then again asked Rupp for his driver's license, which Rupp produced.   (Rupp Aff., ¶ 20; L. Rupp Aff., ¶ 16; McAlister Aff., ¶ 11.)

---

3  The Rupps maintain that McAlister told them that he was driving a lieutenant's vehicle and taking it in to be serviced.   (Rupp Aff., ¶ 13; L. Rupp Aff., ¶ 12.)   McAlister denies this account and maintains that the Rupps repeatedly misstated to Parisi and Giallella that he said he was driving the lieutenant's vehicle to the garage.   (McAlister Aff., ¶ 9; Defendants' Response, ¶ 15.)   McAlister insists that he was assigned to retrieve the lieutenant's vehicle *from* the Buffalo Police Department garage and drive it to the district station house.   (McAlister Aff., ¶ 3.)

At this point, Defendant Jeffrey Giallella, a Buffalo police lieutenant, joined the scene.   (Rupp Aff., ¶ 21; L. Rupp Aff., ¶ 17; McAlister Aff., ¶ 9.)   Rupp asked Giallella to cite McAlister for violating the traffic law, instigating the parking lot encounter, and threatening him with arrest.   (Rupp Aff., ¶ 22; L. Rupp Aff., ¶ 20; Defendants' Statement, ¶¶ 23, 24.)   After conferring with McAlister and Parisi, Giallella returned to Rupp and silently handed him a summons, written by McAlister, for violating § 293-4 (G) of the Buffalo City Code (noise ordinance).   (Rupp Aff., ¶ 23; L. Rupp Aff., ¶¶ 20, 21; McAlister Aff., ¶ 12.)   All parties then left the scene without further discussion.   (Rupp Aff., ¶ 24; L. Rupp Aff., ¶ 21.)

The next day, December 2, 2016, Rupp wrote to Defendant Daniel Derenda, Commissioner of the Buffalo Police Department, to complain about the incident from the night before.   (Rupp Aff., ¶ 25; Defendants' Statement, ¶ 27.)   Derenda did not respond. (Rupp Aff., ¶ 25; Defendants' Statement, ¶ 27.)

On October 23, 2017, Rupp and his lawyer appeared before the City of Buffalo Bureau of Administrative Adjudication Department on the noise-ordinance violation. (Rupp Aff., ¶ 26; Defendants' Statement, ¶ 28.)   Rupp was found not guilty and the charge was dismissed.   (Rupp Aff., ¶ 27; Defendants' Statement, ¶ 29.)

## B.  Procedural History

Rupp filed the instant action on November 22, 2017, about one month after the violation appearance.   (Complaint, Docket No. 1.)   He asserts 13 federal and state causes of action as follows:

- First Amendment retaliation against McAlister, Parisi, and Giallella[4] (42 U.S.C. § 1983) (id. ¶¶ 73-83);

- Fourth and Fourteenth Amendment false arrest against McAlister, Parisi, and Giallella (42 U.S.C. § 1983) (id. ¶¶ 84-92);

- Fourth and Fourteenth Amendment malicious prosecution against all defendants (42 U.S.C. § 1983) (id. ¶¶ 93-99);

- New York false arrest against all defendants (id. ¶¶ 100-107);

- New York malicious prosecution against all defendants (id. ¶¶ 108-114);

- First, Fourth, and Fourteenth Amendment failure to supervise and train against the City of Buffalo and Derenda (42 U.S.C. § 1983) ("Monell" claims") (id. ¶¶ 115-124);

- New York respondeat superior against the City of Buffalo (id. ¶¶ 125-128);

- First Amendment overbreadth challenge to Buffalo City Code § 293-4 (G) (42 U.S.C. § 1983) (id. ¶¶ 129-136);

- First Amendment as-applied challenge to Buffalo City Code § 293-4 (G) (42 U.S.C. § 1983) (id. ¶¶ 137-142);

- Fourteenth Amendment void-for-vagueness challenge to Buffalo City Code § 293-4 (G) (42 U.S.C. § 1983) (id. ¶¶ 143-147);

- Failure to intervene against Parisi and Giallella (42 U.S.C. § 1983) (id. ¶¶ 148-153);

- Punitive damages against all defendants (id. ¶¶ 154-155);

- Attorney's fees and costs against all defendants (42 U.S.C. § 1988) (id. ¶¶ 156-157).

Following the close of discovery, the parties filed dispositive motions, which this Court referred to Judge McCarthy pursuant to 28 U.S.C. § 636 (b)(1)(A)-(C).   (Docket

---

4  Rupp sues the individual defendants in both their individual and official capacities.   (Complaint, ¶¶ 13-18.)

Nos. 20, 21, 22.)   Judge McCarthy filed his Report and Recommendation on August 7, 2019.   (Docket No. 30.)   After the parties filed objections and completed briefing, this Court took the motions and objections under advisement without oral argument on September 11, 2019.   (Docket Nos. 31, 32, 34-37.)

### C.  The Report and Recommendation

Judge McCarthy makes numerous findings and recommendations in his Report and Recommendation.   Most prominently, he finds that there are disputed issues of material fact concerning whether McAlister had probable cause to detain and cite Rupp for violating the noise ordinance.   (Report and Recommendation, Docket No. 30, pp. 8-12.)   Due to that finding, Judge McCarthy recommends denial of summary judgment on Rupp's First Amendment retaliation claim (id. pp. 7-14), Fourth Amendment and state law false arrest claims (id. pp. 14-17), state law malicious prosecution claim as to McAlister (id. p. 19), and the defendants' qualified immunity defenses (id. pp. 13-14, 16-17, 20, 21), all of which are dependent on the probable cause question.   Relatedly, Judge McCarthy also finds that disputed issues of material fact preclude summary judgment on Rupp's failure-to-intervene claim (id. at pp. 20-21) and New York respondeat superior claim (id. pp. 25-26) since it cannot be determined at this stage whether a violation of any rights occurred.

As to Rupp's constitutional challenges to Buffalo City Code § 293-4 (G), Judge McCarthy recommends granting summary judgment to Defendants on Rupp's facial challenges because Rupp fails to establish that the noise ordinance is either unconstitutionally overbroad or vague.   (Id. pp. 26-29, 32.)   But as to Rupp's as-applied

challenge, Judge McCarthy finds that disputed issues of material fact exist concerning whether Rupp's conduct violated the noise ordinance, thereby precluding summary judgment.   See id. pp. 29-30.

Finally, Judge McCarthy recommends dismissal of several of Rupp's claims as follows: Fourteenth Amendment false arrest claim (id. p. 14); Fourth and Fourteenth Amendment malicious prosecution claims (id. pp. 18-19); state law malicious prosecution claim as to Derenda, Parisi, and Giallella (id. p. 20); Monell claims (id. pp. 21-25); the official capacity suits against Derenda, McAlister, Parisi, and Giallella (id. p. 7); and the causes of action for punitive damages and attorney's fees (as distinct from the same as forms of relief) (id. at pp. 30-31).

## III.   DISCUSSION

### A. Legal Standards

#### 1.   Review of Magistrate Judge Report and Recommendation

Within 14 days after service of a magistrate judge's Report and Recommendation, a party "may serve and file specific, written objections to the proposed findings and recommendations."   Fed. R. Civ. P. 72 (b)(2); Local Rule 72[5].   The district judge must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 72 (b)(3).   But if no objections are made, or if an objection "is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge," the district judge reviews that portion of the Report and Recommendation only for

---

5  Referring to the Local Rules of Civil Procedure for the United States District Court for the Western District of New York.

clear error.   Taylor Threefeathers Blackhawk v. Hughes, 9:20-CV-241 (LEK/TWD), 2021 WL 752838, at *1 (N.D.N.Y. Feb. 26, 2021) (citing Barnes v. Prack, No. 11-CV-857, 2013 WL 1121353, at *1 (N.D.N.Y. Mar. 18, 2013)).   The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."   28 U.S.C. § 636 (b)(1); see also Fed. R. Civ. P. 72 (b)(3).   The district judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.   Id.

### 2.  Summary Judgment Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a).   A fact is "material" if it "might affect the outcome of the suit under the governing law."   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).   An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion."   Addickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970).   "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper."   Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).   Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper."   Sec. Ins. Co. of Hartford v. Old

Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004) (citations omitted).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment.   Anderson, 477 U.S. at 252.   A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); it must "offer some hard evidence showing that its version of the events is not wholly fanciful," D'Amico v. City of New York, 132 F.3d 145, 49 (2d Cir. 1998).   That is, there must be evidence from which a factfinder could reasonably find for the nonmoving party. Anderson, 477 U.S. at 252.

In the end, the function of the court at the summary judgment stage is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."   Id. at 249; see also Jeffreys v. City of New York, 426 F.3d 549, 551 (2d Cir. 2005) ("district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage").   "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."   Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

This same standard applies to cross motions for summary judgment.   See Morales v. Quintel Ent., Inc., 249 F.3d 115, 121 (2d Cir. 2001).   "[W]hen both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party.   Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration."   Id. (citing Heublein, Inc. v.

United States, 996 F.2d 1455, 1461 (2d Cir. 1993); Schwabenbauer v. Bd. of Educ., 667 F.2d 305, 314 (2d Cir. 1981)).

### 3. Section 1983 and Personal Involvement

Rupp brings his federal claims under 42 U.S.C. § 1983.   Civil liability is imposed under § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws.   See 42 U.S.C. § 1983.   To succeed on a § 1983 claim, a plaintiff must establish that the challenged conduct "(1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."   Whalen v. Cnty. of Fulton, 126 F.3d 400, 405 (2d Cir. 1997); see also Hubbard v. J.C. Penney Dep't Store, 05-CV-6042, 2005 WL 1490304, at *1 (W.D.N.Y. June 14, 2005).

Personal involvement in the deprivation of a federal constitutional right is the *sine qua non* of liability under § 1983.   See Haygood v. City of New York, 64 F. Supp. 2d 275, 280 (S.D.N.Y. 1999).   It is well settled in this circuit that personal involvement by defendants in cases alleging constitutional deprivations is a prerequisite to an award of damages under § 1983.   See McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977); Richardson v. Coughlin, 101 F. Supp. 2d 127, 129 (W.D.N.Y. 2000); Pritchett v. Artuz, No. 99 Civ. 3957 (SAS), 2000 WL 4157, at *5 (S.D.N.Y. Jan. 3, 2000).

The Second Circuit construes personal involvement in this context to mean "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in

11

managing subordinates." Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996); see also

Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). Personal involvement need not be

active participation. It can be found "when an official has actual or constructive notice of

unconstitutional practices and demonstrates gross negligence or deliberate indifference

by failing to act." See Meriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989).

Thus, personal involvement can be established by showing that

> (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to others' rights by failing to act on information indicating that constitutional acts were occurring.

Liner v. Goord, 582 F. Supp. 2d 431, 433 (W.D.N.Y. 2008) (citing Colon v. Coughlin, 58

F.3d 865, 873 (2d Cir. 1995)); Hayut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir.

2003).

### B. Clear Error Review

There are no objections to several recommendations in the Report and

Recommendation. Neither side objects to Judge McCarthy's recommendation that

Defendants be granted summary judgment on Rupp's overbreadth (eighth cause of

action) and vagueness (tenth cause of action) challenges to Buffalo City Code § 293-4

(G). Nor does either side object to Judge McCarthy's recommendation that the following

claims be dismissed: Fourteenth Amendment false arrest (portion of second cause of

action); Fourth and Fourteenth Amendment malicious prosecution (third cause of action);

state law malicious prosecution as to Derenda, Parisi, and Giallella (portion of fifth cause of action); <u>Monell</u> claims (sixth cause of action); punitive damages (twelfth cause of action); attorney's fees (thirteenth cause of action); and the official capacity suits against Derenda, McAlister, Parisi, and Giallella.   Finding no clear error in any of these recommendations, this Court accepts and adopts the relevant portions of Judge McCarthy's Report and Recommendation without modification.

### C.  De Novo Review

Both sides object to the remaining portions of the Report and Recommendation. Rupp objects to Judge McCarthy's finding that disputed issues of material fact concerning probable cause preclude summary judgment in his favor.   In Rupp's view, Judge McCarthy should have recommended granting him summary judgment on his remaining causes of action after finding that his yell was an objectively warranted and justified warning, without the need for factfinding as to his purpose in using an expletive.   He argues that his purpose, which Judge McCarthy found was in dispute, is irrelevant to the probable cause analysis and violates public policy, since no reasonable person could be annoyed or disturbed by an objectively warranted and justified warning.   (Docket No. 31.)

Defendants similarly object to Judge McCarthy's finding that disputed issues of material fact preclude a probable cause determination.[6]   But they maintain that the undisputed record demonstrates that probable cause existed for McAlister to detain and

---

6  Defendants assert other objections as well, but given the outcome herein, this Court need not address them.

cite Rupp for violating the noise ordinance, and therefore, they are entitled to summary judgment on the remaining causes of action.   They also maintain that the undisputed facts demonstrate that Rupp was not engaging in protected speech when he yelled at McAlister's vehicle.

Upon review of the parties' arguments, both in their dispositive motions and objections, this Court finds that Defendants are entitled to summary judgment on each of the remaining causes of action.   The relevant portions of the Report and Recommendation will therefore be set aside in favor of the *de novo* disposition explained below.

### 1. First Amendment Retaliation Claim

Rupp maintains that he is entitled to summary judgment because the undisputed facts establish that the individual defendants retaliated against him for engaging in constitutionally protected speech: speech criticizing or challenging police conduct.   In response, Defendants contend that Rupp was not engaged in protected speech, that his speech was not chilled, and that, in any event, McAlister had probable cause to detain and cite Rupp after he yelled out in a public place.   They therefore ask for summary judgment in their favor.   As noted, Judge McCarthy found that Rupp engaged in constitutionally protected criticism of law enforcement, but further found that summary judgment is precluded for both sides because disputed issues of material fact exist concerning whether McAlister had probable cause to detain and cite Rupp.

The First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech.   See Lozman v. City of Riviera Beach, Fla.,

__ U.S. __, 138 S. Ct. 1945, 201 L. Ed. 2d 342 (2018); Hartman v. Moore, 547 U.S. 250, 256, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006).   To establish a First Amendment retaliation claim, a plaintiff must demonstrate that he (1) exercised a right protected by the First Amendment, (2) suffered an adverse action that was motivated or substantially caused by his exercise of that right, and (3) incurred some injury caused by the defendant's actions.   See Dorsett v. Cnty. of Nassau, 732 F. 3d 157, 160 (2d Cir. 2013) (per curiam); Zuccarino v. Yessman, 19-CV-6370-FPG, 2020 WL 7337781, at *5 (W.D.N.Y. Dec. 14, 2020).   To meet the third element, the plaintiff must establish that the retaliation chilled or adversely affected his speech, or that he suffered some other concrete form of harm.   See Dorsett, 732 F.3d at 157.

The existence of probable cause, however, will generally defeat a First Amendment retaliation claim.[7]   See Mangino v. Inc. Vill. of Patchogue, 808 F. 3d 951, 956 (2d Cir. 2015); Fabrikant v. French, 691 F.3d 193, 215 (2d Cir. 2012).   "Where there is probable cause to arrest a plaintiff or issue a summons, the Court need not make an inquiry into the defendants' motives for doing so."   Norton v. Town of Islip, 97 F. Supp. 3d 241, 257-58 (E.D.N.Y. 2015) (quoting Fabrikant, 691 F.3d at 215); see also Espinoza

---

7 There are two recent exceptions.   In Nieves v. Bartlett, the United States Supreme Court held that probable cause does not necessarily defeat a First Amendment retaliation claim "when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been."   __ U.S. __, 139 S. Ct. 1715, 1727, 204 L. Ed. 2d 1 (2019). The Court cited jaywalking as an example: "[A]t many intersections, jaywalking is endemic but rarely results in arrest.   If an individual who has been vocally complaining about police conduct is arrested for jaywalking at such an intersection, it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable cause for the arrest." Id.   In Lozman v. City of Riviera Beach, Fla., the Supreme Court held that probable cause does not defeat a First Amendment retaliation claim against a municipality that is premised on an arrest made pursuant to a retaliatory official municipal policy if "the alleged constitutional violation was a but-for cause of the arrest." __ U.S. __, 138 S. Ct. 1945, 1952, 201 L. Ed. 2d 342 (2018).   Neither exception applies here.

v. City of New York, No. 11-CV-2108, 2012 WL 4761565, at *5 (S.D.N.Y. Aug. 3, 2012)
(dismissing First Amendment retaliation claim where police officer had probable cause to
ticket the plaintiff).

### a. Rupp did not engage in constitutionally protected criticism of law enforcement nor were his First Amendment rights chilled.

"[T]he First Amendment protects a significant amount of verbal criticism and
challenge directed at police officers."   City of Hous. v. Hill, 482 U.S. 451, 461, 107 S. Ct.
2502, 96 L. Ed. 2d 398 (1987).   "Speech directed at police officers will be protected
unless it is likely to produce a clear and present danger of a serious substantive evil that
rises far above public inconvenience, annoyance or unrest."   Kerman v. City of New
York, 261 F.3d 229, 242 (2d Cir. 2001).

Relying on this body of law, Rupp argues that he engaged in protected criticism of
a police officer when he yelled out at McAlister.   But this argument fails to recognize the
significance of two key admissions.   First, Rupp admits that he did not know that he was
yelling at a police officer until well *after* he yelled.   He therefore did not direct or intend
his speech as criticism of a police officer.   Second, Rupp admits that he yelled out
because he was "[u]pset with the driver's reaction and provoked by the fear he had
induced in my wife and me."   (Rupp Aff., ¶ 7.)   Rupp therefore did not intend or express
his speech as criticism of police conduct in the moment.   To the contrary, the undisputed
record demonstrates that Rupp simply yelled at a passing car, after dark, which yell
contained an expletive.

Now after the fact, Rupp artfully attempts to characterize his yell as a protected

warning about dangerous police conduct—driving a police vehicle at night without headlights illuminated—and argues that he did not have to know that the driver was a police officer for his speech to be protected as criticism of law enforcement under the First Amendment.   (Reply Memorandum, Docket No. 26, p. 3.)   But Rupp offers no authority for this proposition, and none of the cases upon which he relies involve speech directed at an individual who, as it later turned out, just happened to be a police officer.   Rather, and not surprisingly, each of the cases Rupp cites involves speakers criticizing individuals *known* to be police officers and targeted for speech *because* they are police officers engaged in police duties.   <u>See, e.g.</u>, <u>Hill</u>, 482 U.S. at 453-54 (speech directed at a uniformed officer engaged in police duties); <u>Hartman</u>, 547 U.S. at 252-53 (speech directed at federal officials); <u>Lewis v. City of New Orleans</u>, 415 U.S. 130, 94 S. Ct. 970, 39 L. Ed. 2d 214 (1974) (striking down an ordinance criminalizing certain speech directed at police officers); <u>Smith v. Campbell</u>, 782 F.3d 93, 96-97 (2d Cir. 2015) (speech directed at known law enforcement officers related to their police duties); <u>Posr v. Ct. Officer Shield #207</u>, 180 F.3d 409, 413 (2d Cir. 1999) (speech directed at uniformed state court security officers engaged in their duties); <u>Duran v. City of Douglas, Ariz.</u>, 904 F.2d 1372, 1374-75 (9th Cir. 1990) (speech and conduct directed to a uniformed police officer conducting police duties).

Given Rupp's admission that he did not know that he was yelling at a police officer, this Court finds that no reasonable juror could conclude that he engaged in speech protected by the First Amendment in the form of law enforcement criticism.   Rupp therefore cannot establish the first element of his claim, which itself entitles Defendants

to summary judgment.

The undisputed record also demonstrates that the individual defendants' actions did not actually chill Rupp's speech.   To the extent it could be found that Rupp was complaining about police conduct before McAlister detained him, Rupp concedes that he continued to complain about police conduct throughout the encounter with Defendants McAlister, Parisi, and Giallella, and in a letter submitted to Defendant Derenda the next day.   Consequently, there is insufficient evidence from which a reasonable jury could find that the individual defendants' conduct actually chilled Rupp's speech.   See Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001) ("Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech."); Pal v. Cipolla, No. 3:18cv616 (MPS), 2020 WL 6881455, at *14 (D. Conn. Nov. 23, 2020) (finding that the plaintiff's First Amendment rights were not actually chilled where the plaintiff conceded that she filed a complaint with the police department after her encounter with police); Dingwell v. Cossette, 3:17-CV-1531 (KAD), 2020 WL 5820363, at *5 (D. Conn. Sept. 30, 2020) (finding no chilling of speech and granting summary judgment where plaintiff did not stop criticizing police after allegedly retaliatory adverse action taken); Azeez v. City of New York, No. 16 CV 342, 2018 WL 4017580, at *12 (E.D.N.Y. Aug. 22, 2018) (finding that a First Amendment retaliation claim premised on the issuance of a summons in retaliation for threatening to complain about police misconduct failed where the plaintiff, despite the summons, filed a complaint).

Nonetheless, this Court agrees with Judge McCarthy that a reasonable jury could find that Rupp suffered a concrete harm for purposes of the third element by virtue of

having to appear at the Administrative Adjudication Department with counsel on the summons.   See Dorsett, 732 F.3d at 160 ("Chilled speech is not the *sine qua non* of a First Amendment claim.   A plaintiff has standing if he can show *either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm.") (emphasis in original); Smith, 782 F.3d at 100 (finding in relation to the third element that the "issuance of the [traffic] tickets was an injury in that it subjected [plaintiff] to a state action requiring that she either appear in court, pay a fine, or both").

> ### b. McAlister had probable cause to detain Rupp and issue a noise-ordinance summons.

In any event, even if sufficient evidence existed from which a reasonable jury could find in Rupp's favor on each element above, Rupp's First Amendment retaliation claim is defeated by the existence of probable cause.   Probable cause does not require "absolute certainty," see Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003), or "the same type of specific evidence of each element of the offense as would be needed to support a conviction," see Adams v. Williams, 407 U.S. 143, 149, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972).   It requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity."   Illinois v. Gates, 462 U.S. 213, 244 n. 13, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).

Probable cause to arrest or detain exists "when police officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has

committed or is committing a crime." Walczyk v. Rio, 496 F.3d 139, 156 (2d Cir. 2007); see also Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015).   As a fluid concept dependent on "the assessment of probabilities in a particular factual context," probable cause is determined based on the totality of the circumstances.   Gates, 462 U.S. at 232-33. Officers may rely on "those facts available to the officer at the time of the arrest and immediately before it," Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006), and they are "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest," Ricciuti v. N.Y. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997). See also Panetta, 460 F.3d at 395-96 ("An officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause.").

To determine whether probable cause existed for an arrest, courts "assess whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006). "The probable cause determination is objective; it should be made without regard to the officer's subjective motives or belief as to the existence of probable cause." Picard v. Torneo, 3:16cv1564 (WWE), 2019 WL 4933146, at *2 (D. Conn. Oct. 4, 2019); see also Whren v. United States, 517 U.S. 806, 813, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.")

Whether probable cause existed is decided as a matter of law unless the pertinent facts and knowledge of the officer are disputed. See Dufort v. City of New York, 874 F.3d 338, 348 (2d Cir. 2017); Nickey v. City of New York, No. 11-CV-3207, 2013 WL

5447510, at *5 (E.D.N.Y. Sept. 27, 2013) ("[W]hen the facts material to a probable cause determination are undisputed, the matter is a question of law properly decided by the [c]ourt.").   Here, probable cause may be decided as a matter of law because the relevant facts are not in dispute.

Section 293-4 (G) of the Buffalo City Code provides as follows:

> The following acts and the causes thereof are declared to be in violation of this chapter and to constitute unreasonable noise:
>
> . . .
>
> (G) Yelling, shouting or hooting at any time or place so as to annoy or disturb the quiet, comfort and repose of a reasonable person of normal sensitivities.

See Buffalo City Code § 293-4 (G).

In assessing whether probable cause existed for McAlister to detain and cite Rupp for violating this noise ordinance, this Court considers the totality of the following undisputed facts known to McAlister.   First, it was approximately 8:30 p.m. and dark outside.   Second, both McAlister and Rupp were in a public, outdoor space near Chef's Restaurant, which was open and operating.   Third, McAlister stopped his vehicle in the vicinity of Chef's Restaurant to permit two pedestrians to safely cross Seneca Street.[8] Fourth, that after McAlister began to proceed again, Rupp yelled, "Turn your lights on,

---

8 Judge McCarthy found it undisputed that McAlister "nearly hit two pedestrians crossing the street." (Report and Recommendation, p. 11 n. 8.)   From there, he found that Rupp's yell "plainly constitute[d] a justified warning."   Id.   This Court does not share that view of the record.   McAlister states that the pedestrians "abruptly walk[ed] out into the street," and that he stopped for them to cross safely.   (McAlister Aff., ¶¶ 4, 5.)   The Rupps, on the other hand, maintain that McAlister nearly hit the pedestrians, with Rupp estimating that McAlister stopped two feet in front of them, and Linda stating that he stopped "only inches" from them.   (Rupp Aff., ¶ 6; L. Rupp Aff., ¶ 4.)   Notwithstanding this disagreement, it is undisputed that McAlister stopped his vehicle and that the pedestrians crossed safely.

asshole," loudly enough to cause McAlister to turn into the parking lot and further investigate.   Fifth, that the two pedestrians were also in proximity to hear Rupp's yell.

Based on these undisputed facts, this Court concludes as a matter of law that McAlister had probable cause to detain and cite Rupp for violating the noise ordinance. Rupp yelled loudly at night in a public place—loudly enough for McAlister to hear him in his running vehicle as he proceeded down the street—in front of a restaurant and at least three unknown individuals, and his yell contained an expletive.   Given both the volume and nature of Rupp's yell in the presence of bystanders, a reasonable person of normal sensitivities could be annoyed and have their quiet, comfort, and repose disturbed. McAlister therefore had probable cause to detain and cite Rupp for violating the noise ordinance.

Rupp's argument to the contrary is unpersuasive.   Insisting that he was simply issuing a warning to a police officer engaged in dangerous conduct, Rupp argues that McAlister lacked probable cause because he should have known that no reasonable person would be annoyed by a yelled warning.   This argument fails for at least two reasons.

First, Rupp's argument hinges on his belief that a loud warning was warranted. But the salient facts for determining probable cause are those understood by McAlister, not by Rupp.   See Panetta, 460 F.3d at 395.   In that regard, at the time Rupp yelled, McAlister did not perceive any apparent danger or emergency.   There is no evidence that McAlister knew *while he was driving* that his headlights were off, nor did McAlister view the situation with the two pedestrians as dangerous.   (McAlister Aff., ¶¶ 4, 5.)   From

22

McAlister's perspective, the pedestrians stepped in front of him, which caused him to have to stop to allow them to cross safely.   Id.   Whether Rupp perceived the situation differently has no bearing on what McAlister knew at the time he heard Rupp yell for purposes of determining probable cause.   See Lowth v. Town of Cheektowaga, 82 F.3d 563, 570 (2d Cir. 1996) ("[P]robable cause for an arrest must be determined on the basis of the information reasonably available to the arresting officer at the time of the arrest, not on the basis of what the arrested party believed to be happening.")

Second, as McAlister assessed this fluid situation, he was not required to explore every legitimate reason Rupp may have had for yelling.   See Ricciuti, 124 F.3d at 128. Rupp essentially argues that McAlister should have elected not to cite him under the circumstances.   But discretion to charge and probable cause to charge are distinct concepts.   Here, probable cause to believe that Rupp violated the noise ordinance arose the moment McAlister heard Rupp loudly yell a phrase containing an expletive at night in a public place within earshot of himself and at least two bystanders (the pedestrians). Whether McAlister should thereafter have exercised his discretion differently after learning more about the circumstances of Rupp's yell is a separate matter not at issue. For probable cause purposes, McAlister was not required to explore the reason Rupp yelled before detaining him for violating the noise ordinance.   See id.; see also Panetta, 460 F.3d at 395-96.

Accordingly, this Court finds that a person of reasonable caution faced with the undisputed facts known to McAlister at the time in question would have sufficient reason to believe that Rupp violated the noise ordinance, such that probable cause to detain and

cite Rupp for such a violation existed.   See Walczyk, 496 F.3d at 156.   Because the existence of probable cause is a complete defense to Rupp's First Amendment retaliation claim, Defendants McAlister, Parisi, and Giallella are entitled to summary judgment.

> **c. Defendants McAlister, Parisi, and Giallella are entitled to qualified immunity.**

Finally, even if probable cause could be found to be lacking, Defendants McAlister, Parisi, and Giallella would still be entitled to summary judgment based on qualified immunity.   "Qualified immunity protects public officials from civil liability 'if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law.'" Coggins v. Buonora, 776 F.3d 108, 114 (2d Cir. 2015) (quoting Salim v. Proulx, 93 F.3d 86, 89 (2d Cir. 1996)); White v. Pauly, __ U.S. __, 137 S. Ct. 548, 551, 196 L Ed. 2d 463 (2017) (per curiam) ("Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").   Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."   Pearson v. Callahan, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"   Mullenix v. Luna, 577 U.S. 7, 11, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015) (per curiam) (quoting Reichle v. Howards, 566 U.S. 658, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012)).

Clearly established law should not be defined "at a high level of generality."   White, 137 S. Ct. at 552.   Although the caselaw "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate."   Id. at 551 (alteration omitted) (internal quotation marks omitted).

Here, although this Court finds insufficient evidence from which one could reasonably conclude that Rupp was engaged in protected speech, it remains that the First Amendment right to criticize police conduct was clearly established at the time McAlister detained Rupp.   Entitlement to qualified immunity would therefore turn on whether McAlister's probable cause determination was objectively reasonable.   In this regard, "[a]n officer's determination is objectively reasonable if there was 'arguable' probable cause at the time of arrest—that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'"   Jenkins v. City of New York, 478 F.3d 76, 86 (2d Cir. 2007) (quoting Lennon v. Miller, 66 F.3d 416, 423-24 (2d Cir. 1995)).   The essential inquiry is whether it was objectively reasonable for the officer to conclude that probable cause existed.   See id.

Based on the totality of undisputed circumstances set forth above, this Court finds this standard easily met.   At a minimum, reasonable police officers could disagree on whether probable cause existed to detain and cite Rupp for violating the noise ordinance. Consequently, Defendants McAlister, Parisi, and Giallella would be entitled to summary judgment on this basis as well.

### 2.  Fourth Amendment and New York False Arrest Claims

25

A false arrest claim brought under § 1983 and premised on the Fourth Amendment right to be free from unreasonable seizure is analyzed the same as a claim for false arrest/false imprisonment brought under New York law.   See Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012) (per curiam) (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)).   The two claims are essentially synonymous.   See Weyant, 101 F.3d at 853 (citing Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995)); Nix v. City of Rochester, No. 6:14-CV-06395 (MAT), 2017 WL 3387103, at *5 (W.D.N.Y. Aug. 5, 2017).

To succeed on a false arrest/false imprisonment claim, a plaintiff must show that (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.   See Willey v. Kirkpatrick, 801 F.3d 51, 70-71 (2d Cir. 2015) (quoting Broughton v. State of N.Y., 335 N.Ed.2d 310, 314 (N.Y. 1975)); Nix, 2017 WL 3387103, at *5.

Probable cause "is a complete defense to an action for false arrest brought under New York law or § 1983."   Ackerson, 702 F.3d at 19.   Thus, "[t]o avoid liability for a claim of false arrest, an arresting officer may demonstrate that either (1) he had probable cause for the arrest, or (2) he is protected from liability because he has qualified immunity."   Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015); Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994); Walker v. City of New York, 15 CV 500 (NG)(ST), 2017 WL 2799159, at *3 (E.D.N.Y. June 27, 2017) ("An arrest is privileged

when probable cause exists, and probable cause is, therefore, a complete defense to a claim for false arrest.") (citing Weyant).

Having determined above that probable cause existed as a matter of law, or at a minimum, that arguable probable cause existed, summary judgment in Defendants' favor is warranted on Rupp's false arrest claims as well.

In the alternative, as to the state false arrest claim, this Court would decline to exercise supplemental jurisdiction over it given the absence of surviving federal claims. See 28 U.S.C. § 1367 (c)(3).   The United States Supreme Court has instructed that courts should ordinarily decline to exercise supplemental jurisdiction in the absence of federal claims.   See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988) (noting that in the usual case where all federal claims are eliminated before trial, the relevant factors informing the decision of whether to exercise supplemental jurisdiction will "point towards declining to exercise jurisdiction over the remaining state-law claims"); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

The Second Circuit shares this view: where "federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."   Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003); see also Marcus v. AT&T Corp., 138

F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial the state claims should be dismissed as well.")

Accordingly, in the alternative, this Court would decline to exercise supplemental jurisdiction over the state claim and would instead dismiss it under 28 U.S.C. § 1367 (c)(3).

### 3.  New York Malicious Prosecution

The standards for federal and New York malicious prosecution claims are substantially similar.   See Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003).   For a state law claim, a plaintiff must demonstrate "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding, and (4) actual malice."[9]   Brooks v. Whiteford, 384 F. Supp. 3d 365, 371 (W.D.N.Y. 2019); see also Mitchell v. City of New York, 841 F.3d 72, 79 (2d Cir. 2016).

Having determined above that probable cause existed for McAlister to detain and cite Rupp, summary judgment in Defendants' favor is warranted on this claim as well, since the absence of probable cause is a required element of the cause of action.   And here too, this Court would decline to exercise supplemental jurisdiction over this state claim for the reasons set forth above.   See 28 U.S.C. § 1367 (c)(3).

### 4.  New York Respondeat Superior

Unlike municipal liability for federal claims brought under § 1983 and the Monell

---

9 A federal malicious prosecution claim adds a fifth element: the plaintiff must also prove "a post-arraignment seizure."   Swartz v. Insogna, 704 F.3d 105, 112 (2d Cir. 2013).

doctrine, New York law may permit respondeat superior liability against a municipality for torts committed by its employees acting within the scope of their employment.   See Aponte v. City of New York, Case No. 14-CV-3989 (KMK), 2016 WL 5394754, at *7 (S.D.N.Y. Sept. 26, 2016).   But here, in the absence of any state claims over which this Court would exercise supplemental jurisdiction, this claim too must be dismissed.   See 28 U.S.C. § 1367 (c)(3).

### 5.  First Amendment As-Applied Challenge to Buffalo City Code § 293-4 (G)

An "as-applied" constitutional challenge to a statute "requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right."   Field Day, LLC v. Cnty. of Suffolk, 463 F.3d 167, 174 (2d Cir. 2006).   Given this Court's finding that no reasonable juror could conclude that Rupp was engaged in constitutionally protected criticism of police conduct, Rupp's First Amendment "as-applied" challenge necessarily fails, since no reasonable factfinder could conclude that any of the defendants deprived Rupp of a protected right by enforcing the noise ordinance.   Summary judgment in Defendants' favor on this claim is therefore warranted.

### 6.  Failure to Intervene

"It is widely recognized that law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."   Terebesi v. Torreso, 764 F.3d 217, 243 (2d Cir. 2014).   To establish a failure-to-intervene claim, a plaintiff must prove (1) that a constitutional violation occurred against the plaintiff, (2) that the defendant knew, or

deliberately ignored, that the constitutional violation was going to be or was committed, (3) that the defendant had a reasonable opportunity to intervene to prevent the harm, and (4) that the defendant did not make a reasonable effort to intervene.   See Curley, 268 F.3d at 72.   Notably then, a failure-to-intervene claim fails on the first element in the absence of an underlying constitutional violation.   See Alexander v. Nolan, 6:17-CV-725 (GTS/ATB), 2018 WL 6621400, at *8 (N.D.N.Y. Dec. 18, 2018) (finding that failure-to-intervene claim requires underlying constitutional violation) (collecting cases).   Since here there remains no constitutional claim to which a failure-to-intervene claim could attach, this claim must be dismissed.   See id.

## IV.   CONCLUSION

Having reviewed Judge McCarthy's Report and Recommendation, and having considered the Objections and the parties' submissions, this Court accepts the Report and Recommendation in part and sets it aside in part, consistent with the foregoing decision.   Rupp's motion for summary judgment will be denied, and Defendants' motion for summary judgment will be granted.

## V.   ORDERS

IT HEREBY IS ORDERED, that the Report and Recommendation (Docket No. 30) is ACCEPTED in part and SET ASIDE in part, consistent with the foregoing decision.

FURTHER, that Plaintiff's Objections (Docket No. 31) are DENIED.

FURTHER, that Defendants' Objections (Docket No. 32) are GRANTED, consistent with the foregoing decision.

FURTHER, that Plaintiff's Motion for Summary Judgment (Docket No. 20) is

DENIED.

FURTHER, that Defendants' Motion for Summary Judgment (Docket No. 21) is GRANTED, consistent with the foregoing decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:   March 29, 2021
         Buffalo, New York

<u>s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge